IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA MACKNEY, | ) | CASE NO. 1:12CV710 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Jessica Mackney ("Plaintiff" or "Mackney") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying her

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

(the "Act"), 42 U.S.C. §§ 416(i) and 423.  Doc. 1.  This matter has been referred to the

undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule

72.2(b)(1).  For the following reasons, the final decision of the Commissioner should be

**AFFIRMED.**

## I.  Procedural History

On May 4, 2009, Mackney filed an application for DIB, alleging a disability onset date of

June 1, 2004.  Tr. 108-09.  Mackney claimed that she was disabled due to a combination of

impairments, including nervousness, anxiety, and pervasive developmental disorder, which is an

autism spectrum condition.  Tr. 50, 305.  Her disability application was denied initially and on

reconsideration, and she thereafter requested a hearing before an administrative law judge.  Tr.

44-45, 67.  On August 30, 2011, a hearing was held before Administrative Law Judge Ben

Barnett (the "ALJ").  Tr. 23-43.  On October 4, 2011, the ALJ issued a decision finding that

Mackney was not disabled.  Tr. 10-18.  Mackney requested review of the ALJ's decision by the

Appeals Council on November 3, 2011.  Tr. 6.  On January 26, 2012, the Appeals Council

denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II.  Evidence

### A.    Background

Mackney was born on March 7, 1985, and was 19 years old on the alleged disability

onset date.  Tr. 108.  She graduated from high school and completed the training necessary to

become a state tested nursing assistant ("STNA").  Tr. 179-80, 236-38.  Mackney passed the

state certification examination on her second attempt and became a STNA in 2007.  Tr. 236-238.

Mackney worked from 2001 until 2011 in a series of semi-skilled jobs, including daycare

teacher, nursing assistant, health aide, teacher's aide, receptionist, and camp counselor.  Tr. 163-

64, 183-190, 209-215, 228.

### B.    Medical Evidence

#### 1.    Evaluation and Treatment for Pervasive Developmental Disorder

On June 2, 1999, when she was 14 years old, Mackney underwent a neuropsychological

evaluation with the Cleveland Clinic Neuropsychology Department and Learning Assessment

Center.  Tr. 243-251.  She was diagnosed with Pervasive Developmental Disorder Not Otherwise

Specified ("PDD").[1]  Tr. 247.

Mackney subsequently treated with psychologist Catharine Gaw, Psy.D., in individual,

group, and family/parent psychotherapy from August 2001 through September 2005.  Tr. 304.  In

a letter to the Bureau of Vocational Rehabilitation dated November 24, 2006, Dr. Gaw noted that

Mackney's PDD resulted in problems with interpersonal skills, misunderstanding and being

---

[1]  PDD is a condition involving impairment in the development of reciprocal social interaction skills, typically in verbal or nonverbal communication, or with the presence of stereotyped behavior, interests, and activities, but the criteria are not met for a specific Pervasive Development Disorder, such as Autistic Disorder or Attention Deficit Hyperactivity Disorder.  The category includes "'atypical autism' – presentations that do not meet the criteria for Autistic Disorder because of late age at onset, atypical symptomatology, or subthreshold symptomatology." AM. PSYCHIATRIC ASS'N, DSM-IV-TR, 84 (Fourth ed., Text Revision, 15th Printing, 2011) (DSM-IV).

misunderstood by others, thinking in a concrete/literal manner, difficulty organizing herself and her time, and not being able to plan ahead well.  Tr. 305.  Dr. Mackney explained that, in the school setting, PDD is considered to be an autism spectrum disorder.  Tr. 305.  She further noted that Mackney was reluctant to use the medication recommended to assist with her ADHD-like symptoms of PDD.  Tr. 306.  Dr. Gaw stated that Mackney possessed many strengths, including her "determinedness," "enthusiasm" and "motivation to be competent and successful."  Tr. 306. She concluded that Mackney would benefit from working with a job coach who could help her interpret social interactions in the workplace and that she would need specific help with her organizational skills and long-range problem solving skills.  Tr. 306.

Mackney enrolled in a job coaching program with Ohio Rehabilitation Services in April 2007 (Tr. 270-80), but she failed to attend a meeting with her counselor and failed to stay in contact with the provider, "indicat[ing] that [she] didn't feel [she] could participate in services at this time."  Tr. 283.  Her case was therefore closed. Tr. 283-84.

On June 23, 2009, four years after her treatment of Mackney ended, Dr. Gaw wrote a letter to the Lake County Department of Job and Family Services. Tr. 304.  She stated that Mackney could maintain adequate and independent functioning and was capable of consistently working so long as she received support at home and at work regarding skills she developed in psychotherapy, specifically, skills as to her development of theory of mind, self-regulation, executive function, and age-appropriate expression of feelings.  Tr. 304.  Dr. Gaw stated that, without such support, Mackney would have considerable difficulty maintaining employment despite her desire to hold a job. Tr. 304.

### 2.    State Agency Physicians

#### a.    Dr. Zerba

On January 23, 2010, state agency psychologist Margaret Zerba, Ph.D., conducted a

consultative examination of Mackney.  Tr. 308-11.  Mackney reported experiencing difficulties

maintaining employment due to mental health issues.  Tr. 308.  She also told Dr. Zerba that her

sleep and appetite were good and that she had no history of panic attacks or anxiety.  Tr. 309.

Dr. Zerba noted that Mackney's grooming and hygiene were good and that she did not appear to

be depressed.  Tr. 309.  Dr. Zerba diagnosed Mackney with Autistic Disorder and Mathematics

Disorder.  Tr. 311.  Dr. Zerba opined that Mackney was mildly impaired in her ability to

understand and follow directions, mildly impaired in her ability to pay attention to perform

simple, repetitive tasks, mildly impaired in her ability to relate to others in the work

environment, and mildly impaired in her ability to withstand stress and pressures of day to day

work activity.  Tr. 310-11.  Dr. Zerba stated that Mackney functioned within the borderline range

of intelligence but noted that there was no intelligence test data to support her clinical

impression.  Tr. 310-11.  Dr. Zerba assigned Mackney a Global Assessment of Functioning

("GAF") Score of 61,[2] based in part on Mackney's participation in caring for her family and the

fact that she had a boyfriend for a year and a half. Tr. 311.

#### b.    Dr. Finnerty

On February 25, 2010, Todd Finnerty, Psy.D., a state agency physician, reviewed the

medical records and prepared a Mental Residual Functional Capacity Assessment.  Tr. 326-29.

He opined that Mackney was moderately limited in her activities of daily living, moderately

---

[2] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. DSM-IV, at 34. A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

limited in social functioning, moderately limited in maintaining concentration, persistence, or pace, and had no episodes of decompensation.  Tr. 322.  He also found that Mackney "retains the capacity to work in a setting [with] simple and routine tasks without fast paced production quotas. [Plaintiff] is able to interact superficially [with] others."  Tr. 329.  A second state agency psychologist, Dr. Caroline Lewin, concurred with this assessment.  Tr. 330.

3.      **Other Evidence**

On September 17, 2009, Mackney's mother, Rosann M. Mackney, submitted a Third-Party Function Report.  Tr. 192-99.  Mrs. Mackney described activities and chores that Plaintiff does and stated that Plaintiff can: prepare basic single-course meals, drive a car, do basic cleaning around the house, do laundry, mow the lawn, feed the family cat, go grocery shopping and purchase basic groceries for the family up to three times a week, and go shopping for clothes as needed.  Tr. 192-97.  She also stated that Plaintiff could pay attention for one to three hours depending on the particular task and reinforcement.  Tr. 195, 197.  Mrs. Mackney further noted that Plaintiff can use a computer, that she watches television, and that she goes out daily.  Tr. 192, 195.  She stated that Plaintiff is uncomfortable in large groups but does have friends and interacts with people by telephone and computer on a daily basis.  Tr. 196-97.

C.      **Administrative Hearing**

1.      **Mackney's Testimony**

On August 30, 2011, Mackney appeared with counsel and testified at a hearing before the ALJ.  Tr. 25-38.  She testified that she completed high school and obtained her certificate as an STNA.  Tr. 29-30.  She explained that she had made a number of attempts to work over the years but that such attempts were very short, most lasting for only a few weeks.  Tr. 31.  She explained that the job she held for the longest time was as a toddler teacher at a daycare center, which

lasted approximately 5 months. Tr. 32. Mackney testified that she could not work full time competitively because she gets anxious, nervous, and sometimes stressed out if working full time. Tr. 34. She also stated that she has trouble doing more than one task at a time and has a hard time focusing on something for a long period of time. Tr. 35.

Mackney also testified about her pervasive development disorder and explained that her symptoms included stress and nervousness. Tr. 36. She stated that she had problems interacting with people and that she was afraid to be in a crowd. Tr. 37-38. She stated that she was no longer in treatment for her pervasive development disorder and that she was not taking any medication. Tr. 37.

### 2.      Vocational Expert's Testimony

Hermona C. Robinson (the "VE") appeared at the hearing and testified as a vocational expert. Tr. 38-42. She stated that Mackney had previously worked as a nursery attendant, which was a semi-skilled position at a light exertional level, and a nurse assistant, which was a semi-skilled position at a medium exertional level. Tr. 39. The ALJ then asked the VE whether a hypothetical individual with Mackney's vocational characteristics and the following limitations could perform any of her past relevant work or any other work in the national economy:

> No exertional limitations, but is limited to simple, routine and repetitive tasks, requiring no more than four steps. Limited to no fast-paced work requirements. And only superficial contact with the public and coworkers.

Tr. 40. The VE responded that the hypothetical person could not perform any of Mackney's past relevant work but could perform other jobs that existed in significant numbers in the national economy, including the following jobs: cleaner (2,500 jobs in the region, 20,000 jobs in Ohio, and 150,000 jobs nationally), laundry folder (2,000 jobs in the region, 25,000 jobs in Ohio, and 120,000 jobs nationally), and laborer, stores (5,000 jobs in the region, 50,000 jobs in Ohio, and

6

200,000 jobs nationally).  Tr. 40-41.  In a second hypothetical, the ALJ added a limitation that

the individual needs close supervision, defined as having a supervisor checking the person's

work about ten times a day.  Tr. 41.  The VE responded that, with the additional limitation, the

individual could not perform any jobs that existed in significant numbers in the national

economy.  Tr. 41.

### III.  Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the

existence of a disability.  "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).  In making a determination as to disability under this definition, an ALJ

is required to follow a five-step sequential analysis set out in agency regulations.  The five steps

can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe
   before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe
   impairment that has lasted or is expected to last for a continuous period of at
   least twelve months, and his impairment meets or equals a listed impairment,
   claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must
   assess the claimant's residual functional capacity and use it to determine if

claimant's impairment prevents him from doing past relevant work.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV.  The ALJ's Decision

At Step One of the sequential analysis, the ALJ determined that Mackney had not engaged in substantial gainful activity since June 1, 2004, the alleged onset date.  Tr. 12.  At Step Two, he found that Mackney had the following severe impairments: pervasive developmental disorder or autism spectrum disorder.  Tr. 12-13.  At Step Three, the ALJ found that Mackney did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1.[3]  Tr. 13.  The ALJ then determined Mackney's RFC and found that she could perform a range of work at all exertional levels with the following non-exertional limitations: "The claimant is limited to simple routine repetitive tasks requiring no more than four steps, with no fast pace work requirements and no more than superficial contact with the public and coworkers."  Tr. 14.  At Step Four, the ALJ

---

[3]  The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

found that Mackney could not perform her past relevant work.  Tr. 17.  Finally, at Step Five, after considering her vocational factors, RFC, and the evidence from the VE, the ALJ found that Mackney was capable of performing work that existed in significant numbers in the national economy. Tr. 17.  Thus, the ALJ concluded that Mackney was not disabled.  Tr. 18.

### V.  Arguments of the Parties

Mackney objects to the ALJ's decision on two grounds.  First, Mackney argues that the ALJ erred by failing to provide good reasons for rejecting the opinion of her treating physician. Second, Mackney contends that, at Step Five of the sequential analysis, the ALJ improperly relied on testimony of the VE in response to an incomplete hypothetical question.

In reply, the Commissioner asserts that substantial evidence supports the ALJ's decision. The Commissioner contends that the ALJ properly evaluated the opinion of Mackney's treating physician.  He also argues that substantial evidence supports the ALJ's Step Five determination.

### VI.  Law & Analysis

#### A.    Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the

evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.**     **The ALJ Properly Evaluated the Opinion of Mackney's Treating Physician**

Mackney contends that the ALJ erred because he did not expressly state the weight he assigned to the opinion of Dr. Gaw, Mackney's treating psychologist, or provide a sufficient explanation as to why he rejected this opinion.   Doc. 14, pp. 5-8.  Contrary to this argument, the ALJ evaluated Dr. Gaw's opinion, as well as the record as a whole, and reasonably concluded that Mackney could perform simple, unskilled work with only superficial social interaction.  Tr. 15-17.  In reaching this determination, the ALJ properly evaluated the opinion of Dr. Gaw in accordance with the treating physician rule.

Under the treating physician rule, the opinion of a treating source is entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the opinion of a treating source is not accorded controlling weight, an ALJ must consider certain factors in determining what weight to give the opinion, such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.  *Bowen v. Comm'r of Soc Sec.*,

478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d), 416.927(d).

If an ALJ assigns less than controlling weight to a treating source's opinion, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544. However, the ALJ is not obliged to explain the weight afforded to each and every factor that might pertain to the medical source opinions. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x. 802, 804 (6th Cir. 2011); *Allen v. Commissioner of Social Security*, 561 F.3d 646, 651 (6th Cir. 2009) (even a "brief" ALJ statement identifying such factors will be found adequate to articulate "good reasons" to discount a treating physician's opinion).

As discussed above, Dr. Gaw wrote two letters to vocational service providers for Mackney. In her first letter to the Bureau of Vocational Rehabilitation dated November 24, 2006, Dr. Gaw stated that Mackney would benefit from working with a job coach who could help her interpret social interactions in the workplace, as well as assist her with her organizational skills and long-range problem solving skills. Tr. 306. In Dr. Gaw's second letter to the Lake County Department of Job and Family Services dated June 23, 2009, she stated that Mackney could maintain adequate and independent functioning and was capable of consistently working as long as she received support at home and at work regarding skills she developed in psychotherapy. Tr. 304. Dr. Gaw stated that, without such support, Mackney would have considerable difficulty maintaining employment despite her desire to hold a job. Tr. 304.

First, to the extent Dr. Gaw opined that Mackney was unable to work, the ALJ's failure to give any weight to such a determination is not error, as a medical source's conclusion that a claimant is "unemployable" does not constitute a medical opinion, and, therefore, is not entitled to any special weight. A medical source's statement on an issue reserved for the Commissioner,

such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion.  20 C.F.R. § 416.927(e).  Such statements are not entitled to any special deference.  20 C.F.R. § 416.927(e)(3).  "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician."  *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

Second, Mackney has failed to establish that the ALJ actually rejected the opinion of Dr. Gaw.  *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (the plaintiff failed to prove that the ALJ rejected the opinions of the plaintiff's treating physician).  In his discussion of the medical evidence, the ALJ specifically addressed Dr. Gaw's opinion and found that it was consistent with his RFC determination that Mackney could perform simple, unskilled work with only superficial social interaction.  Tr. 16-17.  Importantly, Dr. Gaw never expressed any opinion as to what type of work Mackney could or could not perform, i.e. skilled versus semi-skilled versus unskilled, and never specified any functional limitations for Mackney.  Tr. 304-306.  Instead, she essentially opined that Mackney needed ongoing support to maintain adequate functioning on the job.  Although the ALJ's analysis on this issue could have been clearer, he construed Dr. Gaw's opinion as relating to Mackney's past relevant work at the semi-skilled level and agreed with Dr. Gaw that ongoing job support might have been helpful to Mackney in performing that work.  Tr. 17.  The ALJ determined, however, that Mackney could not perform her past relevant semi-skilled work because of her impairment.  Tr. 17.  He then found that Mackney could "perform the simple tasks of unskilled jobs not requiring more than simple contact with others without the assistance of a job coach."  Tr. 17.  The ALJ concluded that Dr. Gaw's opinion regarding ongoing job support was consistent with his RFC determination because it only applied to Mackney's past semi-skilled work and he limited Mackney to

12

unskilled work, which he found that Mackney could perform without ongoing job support. In other words, the ALJ accounted for Dr. Gaw's opinion that Mackney needed ongoing support to maintain adequate functioning on the job by limiting her to unskilled work with limited social interaction and no fast-paced work requirements. Tr. 163-64, 183-90, 209-15, 228, 304, 306. The ALJ therefore explained the consideration he gave to Dr. Gaw's opinion. Accordingly, Mackney's arguments that the ALJ rejected the opinion and failed to give good reasons for that rejection are without merit.

Moreover, the failure of the ALJ to state explicitly how much weight he gave Dr. Gaw's opinion is, alone, insufficient to warrant remand in this case. In *Bass*, the Sixth Circuit held that an ALJ's failure to expressly state how much weight he gave to the opinion of a treating physician is harmless where the ALJ's opinion is "completely consistent" with the opinion in question. *Bass*, 499 F.3d at 510 (citing *Wilson*, 378 F.3d at 547). As set forth above, the ALJ's RFC determination is completely consistent with Dr. Gaw's opinion in this case.

Further, substantial evidence supports the ALJ's RFC determination and his conclusion that Mackney did not require ongoing support to perform unskilled work.[4] The consultative examiner, Dr. Zerba, found that Mackney's impairment did not rise to a disability level. Significantly, agency regulations provide that state agency reviewing sources are highly skilled medical professionals who are experts in social security issues. *See* 20 C.F.R. § 416.927. At the examination, Mackney told Dr. Zerba that she was "high functioning." Tr. 311. Dr. Zerba also noted that Mackney had friends, had a boyfriend of a year and a half, and that she shared household chores with her mother. Tr. 310-11. Dr. Zerba opined that Mackney was only mildly

---

[4] A claimant's RFC is a measure of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545, 416.945. The ALJ is responsible for assessing a claimant's RFC based on the relevant evidence. 20 C.F.R. §§ 404.1545, 404.1546(c). In reaching an RFC determination, the ALJ may consider both medical and non-medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

impaired in her ability to understand and follow directions, mildly impaired in her ability to pay attention to perform simple, repetitive tasks, mildly impaired in her ability to relate to others in the work environment, and mildly impaired in her ability to withstand the stress and pressures of day to day work activity. Tr. 310-11. She also assigned Mackney a GAF score of 61, which denotes "[s]ome mild symptoms...OR some difficulty in social, occupational, or school functioning...**but generally functioning pretty well**..." DSM-IV, 34 (emphasis added).

Dr. Finnerty, the state agency reviewing psychologist, stated that Mackney's claims were not fully proportionate to the objective medical evidence of record. Tr. 329. He noted that Mackney "completes chores, works part time, goes to movies, hangs out [with] friends/boyfriend, is able to sustain attention and concentration reading." Tr. 329. Dr. Finnerty opined that "claimant retains the capacity to work in a setting [with] simple and routine tasks without fast paced production quotas. [Claimant] is able to interact superficially [with] others." Tr. 329. He also concluded that Mackney was moderately limited in her activities of daily living, moderately limited in social functioning, moderately limited in maintaining concentration, persistence, or pace. Tr. 322.

In addition to these medical opinions, the Third-Party Function Report submitted by Mackney's mother also supports the ALJ's RFC determination. In her report, Mrs. Mackney stated that Plaintiff is capable of driving on her own, cleaning the house, doing laundry, mowing the lawn, using the computer to search for jobs and interact with people, grocery shopping up to three times per week to buy basic groceries for the family, and shopping for clothes as needed. Tr. 192-99. Mrs. Mackney also stated that Plaintiff could pay attention for one to three hours depending on the particular task and reinforcement. Tr. 195, 197. These activities support the ALJ's RFC determination that Plaintiff can perform unskilled work. *Vance v. Comm'r of Soc.*

*Sec.*, 260 Fed. App'x. 801, 805 (6th Cir. 2008) (stating "[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments").

In sum, all of this evidence supports the ALJ's conclusion that Mackney could perform simple, routine, repetitive tasks with no fast-paced work requirements and with no more than superficial contact with the public and coworkers. The ALJ's RFC determination is completely consistent with Dr. Gaw's opinion and the ALJ's failure to state explicitly how much weight he gave Dr. Gaw's opinion is therefore harmless.

**C.      The ALJ Satisfied the Commissioner's Burden at Step Five of the Sequential Analysis**

Mackney also argues that the ALJ did not satisfy the Commissioner's burden at Step Five because he relied on testimony of the VE that was in response to an incomplete hypothetical. Doc. 13, pp. 18-20. Specifically, Mackney argues that the ALJ's reliance on the VE's testimony was inappropriate because it did not contain the limitation that Mackney would require extra supervision on the job. This argument is also without merit.

Once it has been determined that a claimant cannot perform his past relevant work, the burden shifts to Commissioner at Step Five to show that there are other jobs that exist in significant numbers in the economy that the claimant can perform, consistent with his or her RFC and vocational factors of age, education and work experience. *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987). To satisfy this burden, the ALJ may rely on the testimony of a vocational expert as long as it is in response to a hypothetical that accurately reflects the claimant's physical and mental limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In formulating the hypothetical, the ALJ only needs to incorporate those limitations he accepts as credible. *See Casey v. Sec'y of Health &*

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the ALJ asked the VE a hypothetical question that included the following limitations, which were ultimately adopted by the ALJ in his RFC determination: the hypothetical individual (claimant) is limited to simple routine repetitive tasks requiring no more than four steps, with no fast pace work requirements and no more than superficial contact with the public and coworkers.  As discussed above, this hypothetical accurately portrayed the limitations the ALJ found to be credible.  The ALJ found that these limitations were consistent with Dr. Gaw's opinion, as well as the more specific limitations set out by Dr. Finnerty, who concluded Mackney is limited to working in a setting with simple and routine tasks without fast paced production quotas (Tr. 40, 326-27, 329) and the limitations set forth by Dr. Zerba, who opined that Mackney was only mildly impaired in her work-related mental capabilities.  Tr. 40, 311.  Thus, the hypothetical question was an accurate reflection of Mackney's functional limitations as credibly established in the record.  In response to the hypothetical, the VE testified that there were a significant number of jobs in the national economy that the hypothetical individual could perform.  *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 633 (6th Cir. 2004) (holding that the ALJ was responsible for determining Plaintiff's RFC, then framing hypothetical questions to the vocational expert incorporating only the RFC).  Therefore, the ALJ did not err, and the VE's testimony -- given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible -- constituted substantial evidence capable of supporting the Step Five finding.  The ALJ thus reasonably found Mackney not disabled at Step Five.

## VII.  Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff

Jessica Mackney's DIB application should be **AFFIRMED.**

Dated: December 20, 2012

_____
Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).